UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:19-CR-22-REW-HAI |
| v. | ) | |
| | ) | |
| ANTOINE THOMPSON, | ) | OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Antoine Thompson, through counsel, moves to dismiss Count 2 of the Indictment. The Count charges him with murder while federally confined under a life imprisonment sentence, in violation of 18 U.S.C. § 1118. DE #112 (Motion). Defendant argues that he fails to meet the required status element of § 1118 because the predicate life sentence was and is unconstitutional. The matter is fully briefed. DE ##122, 123.

Thompson's motion is long on high-minded rhetoric but painfully short on controlling law. Though his predicate D.C. conviction may be vulnerable (at least in part) to collateral attack, Defendant does not establish a right to challenge the conviction here. Further, he does not demonstrate that, under the *Graham-Miller-Montgomery* line, his conviction is not still a valid predicate in this context. For these reasons and on this record, the Court **DENIES** the motion.

1. **Factual and Procedural Background**

In April 2019, the grand jury returned an eight-count Indictment (DE #1), charging four individuals with various offenses related to the 2014 death of inmate Courtney D. Jones at United States Penitentiary (USP) McCreary in Pine Knot, Kentucky. The Indictment alleges that Thompson, aided and abetted by others, murdered Jones with premeditation, in violation of 18

1

U.S.C. §§ 2 and 1111(a) (Count 1), and murdered Jones while under a life imprisonment sentence, in violation of 18 U.S.C. §§ 2 and 1118 (Count 2). Counts 1 and 2 are both potentially capital crimes. The Indictment further charges Thompson with possessing contraband (a shank) within the facility (Count 6). Thompson appeared and pleaded not guilty to the offenses in July 2019. DE #59. The parties met with the Department of Justice's (DOJ) Capital Review Committee in mid-June 2020. *See* DE ##143, 144, 146 at 2. No decision concerning the penalty sought has yet issued, per the record.[1]

## 2. Review Standard

Rule 12 permits parties to raise by pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b). "Generally, motions are capable of determination before trial if they raise questions of law rather than fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976). "Thus, a defense is 'capable of determination if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" *Id.* (quoting *United States v. Covington*, 89 S. Ct. 1559, 1561 (1969)). Further, the Court is "not limited to the face of the indictment in ruling on the motion to dismiss[,]" as "Rule 12 vest[s] the court with authority 'to determine issues of fact in such a manner as the court deems appropriate.'" *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992) (quoting *Jones*, 542 F. 2d at 665). Because Thompson's Rule 12 motion raises a discrete legal question, distinct from and requiring no inquiry into the case's factual merits, it is apt for pretrial resolution.

---

[1] The case is not currently set for trial, pending the Capital Review Committee decision.

3. Analysis

Against this backdrop, the Court evaluates Thompson's Count 2 dismissal request. Section 1118 provides: "A person who, while confined in a Federal correctional institution under a sentence for a term of life imprisonment, commits the murder of another shall be punished by death or by life imprisonment." 18 U.S.C. § 1118(a). The statute defines a "term of life imprisonment" as "a sentence for the term of natural life, a sentence commuted to natural life, an indeterminate term of a minimum of at least fifteen years and a maximum of life, or an unexecuted sentence of death." *Id.* § 1118(b). Thompson received a lengthy sentence from the D.C. Superior Court in 2000, 127 years to life on a series of charges punished consecutively; he was a juvenile at commission but tried as an adult. Thompson argues that the D.C. court and the government have recognized the sentence's unconstitutionality and anticipate re-sentencing. As such, he claims he was not serving a legitimate "term of life imprisonment" under the statute at the time of the alleged offense. It is undisputed that, on January 5, 2000, the D.C. Superior Court sentenced Thompson to an aggregate term (on 13 separate counts) of roughly 127 years to life imprisonment, for offenses related to a drive-by shooting that Defendant committed when he was 17 years old. *See* DE #112-1 (D.C. Judgment).[2] The multi-count conviction evidently involved Thompson machine-gunning a crowd, wounding four.

All parties involved in the D.C. Superior Court case (Thompson, the prosecution, and the court)—as well as the former sentencing judge—have since agreed that the 127-life sentence was unconstitutional, under the Eighth Amendment, when imposed in Thompson's case. *See* DE #112-2 (Judge Milliken Letter); DE #112-3 (Government Response to Motion to Vacate) at 2; DE #112-5 (D.C. Hr'g Tr.) at 18 (acknowledging the court's intent to resentence Thompson, unless his

---

[2] The D.C. court treated Thompson as an adult at all stages of the case.

pending collateral attacks, aimed at *Brady* and *Napue* issues, are successful).[3] The parties and court evidently anticipate resentencing Thompson, should his convictions stand. The perceived unconstitutionality of Thompson's sentence stems from the line of Supreme Court authority distinguishing between juvenile and adult offenders, capping the penalties courts may constitutionally impose on the former class. *See Roper v. Simmons*, 125 S. Ct. 1183 (2005) (holding that execution of defendants that were juveniles at the time of their offenses is unconstitutional); *Graham v. Florida.*, 130 S. Ct. 2011 (2010) (holding that the Eighth Amendment prohibits life-without-parole (LWOP) sentences for juvenile non-homicide offenders); *Miller v. Alabama*, 132 S. Ct. 2455 (2012) (holding, per the *Graham* rationale, that LWOP sentences for all juvenile offenders—including homicide offenders—are unconstitutional); *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016) (clarifying that *Miller* announced a new, substantive rule of constitutional law that is retroactive). Thompson received the 127 year-life sentence in 2000 for crimes not involving homicide. According to this record, the conviction and sentence remain in place, although a D.C. challenge pends.

Thompson contends that his D.C. Superior Court penalty runs afoul of *Graham* and *Miller* and, as an unconstitutional LWOP sentence,[4] cannot satisfy the status predicate in § 1118(a). He

---

[3] Defendant has also moved to vacate his Superior Court convictions, alleging violations of *Brady v. Maryland*, 83 S. Ct. 1194 (1963), and *Napue v. Illinois*, 79 S. Ct. 1173 (1959).

[4] Per the defense, the sentence of 127 years to life presented no reasonable opportunity for release during Thompson's life and thus was functionally an impermissible LWOP sentence, as imposed. *See Graham*, 130 S. Ct. at 2030 (finding that the Eighth Amendment requires sentencing courts to offer non-homicide defendants "some meaningful opportunity to obtain release" during their lifetimes). The Government does not contest that the sentence functionally is a LWOP term. The Sixth Circuit has not treated a total lengthy term (even a total functionally life term) as necessarily falling under *Graham* when the term resulted from a series of consecutive sentences. *See Bunch v. Smith*, 685 F.3d 546, 551 (6th Cir. 2012) (discussing 89-year term imposed and *Graham*: "The Court did not address juvenile offenders, like Bunch, who received consecutive, fixed-term sentences for committing multiple nonhomicide offenses. Thus, we cannot say that Bunch's sentence was contrary to clearly established federal law."). This suggests that a challenge here,

does not, however, cite any authority undergirding this interpretation of the § 1118(a) status element. In support of his key assertion that if a defendant "committed the alleged offense after already receiving the right to resentencing, they do not meet the 'relevant status' necessary to be charged under 18 U.S.C. § 1118[,]" Thompson cites only *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019). DE #112 at 7. *Rehaif*, though, offers no assistance in this scenario—it holds that, in 18 U.S.C. §§ 922(g) and 924(a)(2) prosecutions, the Government must prove that the accused both knowingly possessed a firearm and that, at the time he possessed it, knew that he had a disqualifying conviction. 139 S. Ct. at 2200. In other words, the decision extended the "knowing" qualifier to both the possession and the status elements of §§ 922(g) and 924(a)(2). Thompson does not here argue that he did not know he was serving a life imprisonment sentence at the time of the alleged offense conduct; moreover, even if he had so argued, that factual issue, and were that a matter at issue in the case, it would be improper for pretrial resolution.[5]

Defendant's central thrust seems to be an engrafted validity qualifier—that is, that the predicate "term of life imprisonment" aggravator within § 1118 must be constitutional to count. This has logical but not textual appeal. The § 1118 text itself includes no requirement that the underlying life sentence be valid, constitutional, or immune to collateral challenges. "In all cases of statutory construction, the starting point is the language employed by Congress. Where the statute's language is plain, the sole function of the courts is [to] enforce it according to its terms." *United States v. Calor*, 340 F.3d 428, 431 (6th Cir. 2003) (citation omitted). The text of § 1118(a), requiring that a defendant be "under a sentence for a term of life imprisonment," as illuminated by

---

where the sentence was the result of stacked consecutive terms, might not be the layup Thompson assumes.
[5] The Court doubts this application, based on *Rehaif*'s approach to the distinct § 922 and § 924 statutory text, but makes no decision at this point.

5

the § 1118(b) definition, is without qualification. There are no cases, either that Defendant cites or that the Court independently has found, interpreting § 1118(a) in the manner Thompson here urges. Indeed, in a somewhat analogous scenario, the Sixth Circuit (informed by Supreme Court precedent) has reached the opposite conclusion, emphasizing that § 922(g)(1)'s unambiguous text attaches no validity requirement to the crime's status element. *See United States v. Houston*, 813 F.3d 282, 294 (6th Cir. 2016) (noting that "Congress did not limit the class of prohibited persons under § 922(g)(1) to those validly convicted"); *Lewis v. United States*, 100 S. Ct. 915, 921 (1980) (holding that an earlier, similar statute prohibiting felons from possessing firearms did not violate the Due Process Clause "despite the fact that the predicate felony may be subject to collateral attack on constitutional grounds"); *see also United States v. Morgan*, 216 F.3d 557, 566 (6th Cir. 2000) (concluding that, in enacting the § 922 statutory scheme, "Congress intended to establish a class of individuals who are presumptively dangerous and did not limit the class to those who are validly convicted").

Similarly, here, the language used in § 1118 reflects Congress's intent to classify offenders serving certain types of sentences as subject to particular penalties for the specified conduct. To that end, Congress broadly defined a "term of life imprisonment" to include, among other things, a sentence ultimately commuted to natural life and "an indeterminate term of a minimum of at least fifteen years and a maximum of life[.]" 18 U.S.C. § 1118(b). Sentence commutation is, in the criminal law context, "[t]he executive's substitution in a particular case of a less severe punishment for a more severe one that has already been judicially imposed on the defendant." *Commutation*, Black's Law Dictionary (11th ed. 2019). Nor does § 1118(b) attempt to limit the types of commuted sentences that may satisfy the definition (*i.e.*, to exclude those commuted due to actual or perceived invalidity). The § 1118(b) "life imprisonment" definition further includes

6

indeterminate sentences beginning at only fifteen years (provided the maximum term is life). Notably, such a sentence (of fifteen years to life) would remain valid even post-*Graham*. *See* 130 S. Ct. at 2030 (requiring sentencing courts to provide juvenile offenders with "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation").

Ultimately, the Court rejects Thompson's motion for two reasons.

First, Defendant nowhere grapples with whether he can, in fact, challenge predicate validity as part of a prosecution for this crime in this forum. The Indictment charges murder while under a life term, and he tries to invalidate the propriety of the life term. In multiple like contexts, though, courts have refused collateral attacks against predicate convictions. *United States v. Steverson*, 230 F.3d 221, 224–25 (6th Cir. 2000) (citing *Lewis* and holding: "As the government points out, proof of a defendant's prior felony convictions is admissible for purposes of proving a § 922(g)(1) violation, even if the prior convictions are constitutionally deficient"); *United States v. Salamanca*, No. 19-546, 2020 WL 4437134, at *1 (6th Cir. Aug. 3, 2020) ("A state criminal judgment that has not been set aside . . . is 'presumptively valid and may be used to enhance a federal sentence.' It may be collaterally attacked at federal sentencing only if the state procured that judgment in violation of the defendant's right to counsel under *Gideon*. . . . 'No other constitutional challenge to a prior conviction may be raised in the sentencing forum.'") (first quoting *Daniels v. United States*, 121 S. Ct. 590 (2001); then citing *Custis v. United States*, 114 S. Ct. 1732 (1994)); *United States v. Diaz*, 967 F.3d 107, 109 (2d Cir. 2020) ("We agree that SORNA does not permit defendants to collaterally challenge predicate sex offender convictions. SORNA is similar in structure to the statutes that the Supreme Court has held do not authorize collateral attacks of predicate convictions[.]"); *United States v. Gutierrez-Cervantez*, 132 F.3d 460, 462 (9th Cir. 1997) ("Thus, following *Custis* . . . the Constitution requires only that collateral attacks in illegal re-entry

7

after deportation proceedings be allowed on convictions obtained in violation of the right to counsel."); *United States. v. Snyder*, 235 F.3d 42, 52 (1st Cir. 2000) ("Thus [the Court] concluded that '§ 1202(a)(1) prohibits a felon from possessing a firearm despite the fact that the predicate felony may be subject to collateral attack on constitutional grounds.'") (*quoting* Lewis, 440 U.S. at 65).

In *Custis*, the Court recognized that Congress could (and has) opened the door to such collateral attacks in specific contexts. Thus, the 21 U.S.C. § 851 mechanics offer a limited avenue for challenging the validity of an aggravating predicate under that Title. *Custis*, 114 S. Ct. at 1736. Custis found the lack of such a procedure instructive in the § 922 context. *Id.* at 1737. The Court also refused to extend the constitutional exception for such a collateral attack beyond the "unique constitution defect" of failure to appoint counsel. *Id.* at 1738. Of course, Thompson points to nothing in § 1118 that creates a statutory procedure for assessing life sentence validity as part of the elemental analysis, and he challenges his life sentence under Eighth Amendment principles.

The motion simply fails to establish the right to challenge the constitutional validity of the predicate sentence in this forum.

Second, the *Graham-Miller-Montgomery* line does not purport to vitiate convictions or sentences. Rather, *Montgomery* extended sentencing jurisdictions the opportunity to fix any Eighth Amendment defect by opening applicable LWOP sentences to a curative release-opportunity. The District of Columbia did this via 2016 passage of the IRAA. The Court of Appeals for the District characterized the statute as follows:

> The IRAA thus furnishes a sufficient remedy for *Miller* violations. . . . The sentence appellant is serving is now equivalent, for Eighth Amendment purposes, to a life sentence with parole eligibility – a sentence the Eighth Amendment permits.
> . . . .
> In reality, the IRAA fundamentally transformed every LWOP sentence imposed in Superior Court for crimes committed by juvenile offenders, by effectively

> converting each such sentence into one with multiple realistic and meaningful possibilities of release while the offender still has years of life left. What was presumptively unconstitutional in those sentences therefore was not left "in place"; it was superseded by a new procedure providing all that the Eighth Amendment requires.

*Williams v. United States*, 205 A.3d 837, 849 (D.C. 2019). Although Thompson repeatedly calls his life sentence unconstitutional, the suspect element of the sentence is not the life part but rather the denied potential for release.[6] By the IRAA, the District created multiple opportunities for review and an assessment of release, a mechanism *Williams* dubbed a "constitutional equivalent of parole." *Id.* at 849–50.

Here, Thompson does not show that he took any timely steps to challenge his original sentence under *Graham*, in the sentencing jurisdiction, and the sentence remained in effect at the time of the alleged murder. Indeed, the sentence remains in place today, as far as the Court can tell.[7] It, like all such sentences in the D.C. Superior Court, however, is under the modifying effect of the IRAA.[8] Although it may be fair to question the validity of Thompson's sentence prior to the legislative cure, Defendant simply has not cited to a case that would treat the topic as cognizable in this Court at this juncture.

---

[6] "Importantly, the Supreme Court's three LWOP decisions do not proscribe, and impose no restrictions on sentencing juvenile offenders to 'life with the possibility of parole.'" *Williams*, 205 A.3d at 845.

[7] In anticipation of resentencing, Thompson claims he "cannot receive a life sentence." DE 123, at 2. This is confusing to the Court. A life sentence here would not, under the cases relied on, be unconstitutional. *Graham* required a realistic opportunity for release but did not require that a convicted person actually earn release. *See Graham*, 130 S. Ct. at 2030 ("[W]hile the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life."). Likewise confusing is the claim that the IRAA applies only to sentences that are constitutional. This directly contradicts the treatment in *Williams*: "The IRAA thus furnishes a sufficient remedy for *Miller* violations." 205 A.2d at 849.

[8] This is the remedy cited by the government relative to Thompson's D.C. filing. DE 112-3, at 3.

Accordingly, and for all of the cited reasons, the Court **DENIES** DE #112.[9]

This the 24th day of August, 2020.

Signed By:
Robert E. Wier
United States District Judge

---

[9] The Eighth Amendment, as to Count 2, seems entirely derivative of *Graham*. Count 2 does not seek to punish juvenile conduct, but Thompson threads his predicate challenge into something of a separate theory on Count 2. Again, absent any case law analyzing whether punishment for a crime committed as an adult (but based in part, as an aggravating matter, on a juvenile conviction) might offend the Eighth Amendment, the Court rejects the challenge without prejudice.